UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH FABOZZI, | No. C-11-4385 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND** |
| STUBHUB, INC., *et al.*, | |
| Defendants. | **(Docket Nos. 23, 32)** |

_____/

Plaintiff Joseph Fabozzi filed suit against Stubhub, Inc. ("Stubhub"), and The Phillies, L.P. (the "Phillies"), alleging violations of Pennsylvania's ticket statute, 4 P.S. § 201 *et seq.*, and California's Unfair Competition Law ("UCL), Cal. Bus. & Prof. Code § 17200 *et seq.* Pending before the Court are Defendants' motion to dismiss and Plaintiff's motion for leave to amend. After considering the parties' submissions and oral argument, and for the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss and **DENIES** Plaintiff's motion for leave to amend.

## I.   FACTUAL & PROCEDURAL BACKGROUND

This case concerns the primary and secondary market for tickets to major league baseball games at the Phillies' Citizens Bank Park ("CBP"). First Amended Complaint ("FAC"), ¶ 1. The Phillies operate CBP and sell tickets to games at CBP directly through their exclusive primary ticket agent, Ticketmaster. *Id*. ¶¶ 9, 13. These tickets are printed with the established price and the "maximum premium" – "which shall not exceed twenty-five percent (25%) of the price of the ticket or the sum of five dollars ($5.00), whichever shall be more" – on the face of the ticket, as required by Pennsylvania's ticket statute. *Id.* ¶¶ 10-13; *see* 4 P.S. § 211. Some tickets to Phillies games are

1  also sold and issued on the secondary market through Stubhub, "an online marketplace for the resale
2  of sporting events (including Phillies' games at CBP), concert, and theater tickets." *Id.* ¶¶ 8, 14.
3  "Unlike the tickets to Phillies' games at CBP issued by Ticketmaster, tickets to Phillies' games at
4  CBP issued by StubHub are printed *without* the established price or the maximum premium on the
5  ticket." *Id.* ¶ 14 (emphasis in original). The Phillies have authorized Stubhub to be its exclusive
6  secondary ticket reseller,[1] and to cancel and reissue tickets through Stubhub's website. *Id.* ¶ 16.

7  Plaintiff Fabozzi, a New Jersey resident, sought tickets to a Philadelphia Phillies baseball
8  game in May 2011. FAC ¶¶ 5, 44. He went to the Phillies website, on which he followed a
9  hyperlink to Stubhub.com. *Id*. ¶ 45. At that time, Plaintiff was unaware that Stubhub operated in
10 the secondary, rather than the primary, ticket market. *Id*. ¶ 46. Through Stubhub, Plaintiff
11 purchased two tickets from an unknown seller to the Hall of Fame Club, Section 212, Row 1 and
12 paid $75 for each ticket, plus a service fee of $15 and an eDelivery service fee of $5.20; thus, his
13 total payment was $170.20. *Id*. ¶¶ 47-48. Plaintiff received electronic tickets issued by Stubhub,
14 which did not contain the established price or the maximum premium. *Id*. ¶ 49. Stubhub's website
15 also "did not conspicuously display the price list for the tickets purchased by Plaintiff and did not
16 provide Plaintiff with a hyperlink to such a price list." *Id*. ¶ 50.

17 Plaintiff alleges that by failing to disclose the established price and maximum premium on
18 Stubhub's reissued tickets, Defendants inflate demand for Phillies tickets and force consumers to
19 pay higher ticket prices. *Id*. ¶ 71. Plaintiff alleges that "he would not have purchased such Tickets,
20 or would not have done so at the price he paid, had he known the established price when he
21 purchased the Tickets." *Id*. ¶ 52.

22 Plaintiff filed suit on behalf of a purported class of people who have purchased tickets to
23 Phillies games at CBP through Stubhub, alleging that Defendants have violated Pennsylvania state
24 law. First, Plaintiff alleges that Defendants violate 4 P.S. § 211, which provides:

25  > The owner of every place of amusement shall, if a price be charged for admission
26  > thereto, cause to be plainly stamped or printed or written on the face of every ticket to

---

[1] Although Plaintiff uses the phrase "ticket reseller" to describe Stubhub, Stubhub does not actually buy or sell tickets; rather, it is a marketplace for third-party users to buy and sell tickets. Plaintiff acknowledges as much in other parts of the FAC, including when he alleges that he purchased his Phillies tickets from an "unknown seller" on Stubhub. FAC ¶ 47; *see also id*. ¶¶ 8, 18.

2

> be so used, the established price. Such owner shall likewise cause to be plainly stamped, printed or written on the face of each such ticket the maximum premium, which shall not exceed twenty-five percent (25%) of the price of the ticket or the sum of five dollars ($5.00), whichever shall be more, plus lawful taxes, at which such ticket may be resold or offered for resale, other than under section 2(c) or by ticket brokers duly licensed by a city of the first class as of June 1, 2007.

The statute defines "owners" as "[a]ny person who owns, operates or controls a place of amusement or who promotes or produces an amusement, or any person who promotes or produces an amusement with the written contractual consent of the owner or operator of an amusement." § 201(6). Second, Plaintiff alleges that Stubhub violates 4 P.S. § 202(a) by failing to obtain a reseller's license. Third, Plaintiff alleges Stubhub violates 4 P.S. § 210(c), which "requires a licensee to conspicuously display a price list showing the established price and the price being charged by such licensee for every type of ticket which he is reselling." *Id*. ¶ 66. In addition to these direct causes of action, Plaintiff asserts a cause of action for unlawful and deceptive conduct under the California unfair competition law ("UCL").[2] He seeks injunctive relief, restitution and damages, and attorneys' fees and costs on behalf of the class.

Defendants filed a motion to dismiss the FAC for failure to state a claim. Docket No. 23. In response, Plaintiff filed a motion for leave to file his proposed Second Amended Complaint ("PSAC") combined with his opposition to the motion to dismiss. Docket No. 32. Both motions are currently pending.

## II. DISCUSSION

A. Legal Standard

    1. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court

---

[2] Plaintiff's FAC, against which Defendants filed their motion to dismiss, also asserts a cause of action directly under the Pennsylvania statute. However, in response to Defendants' motion to dismiss, Plaintiff appears to concede that this statute provides no private right of action, and his proposed second amended complaint eliminates this cause of action.

3

must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations ... it must plead 'enough facts to state a claim to relief that is plausible on its face.' " *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id*.

Furthermore, Plaintiff's claims under the UCL alleging deceptive or fraudulent conduct are subject to Rule 9(b)'s particularity requirement, which requires a plaintiff to identify the "who, what, when, and how" with sufficient specificity as to "give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1105-06 (9th Cir.2003) (citations omitted).

2.     <u>Motion for Leave to Amend</u>

Federal Rule of Civil Procedure 15 governs amendments to pleadings; it provides in relevant part that a "court should freely give leave [to] amend when justice so requires." Fed. R. Civ. P. 15(a). In general, "[f]ive factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). An amendment is futile if a proposed claim could not withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Nordyke v. King,* 644 F.3d 776, 788 n.12 (9th Cir. 2011) ("A proposed amended complaint is futile if it would be immediately 'subject to dismissal.'") (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended

complaint would also be subject to dismissal.") (internal citations omitted). "'Futility alone can justify the denial of a motion to amend.'" *Johnson*, 356 F.3d at 1077.

B. <u>Motion to Dismiss</u>

    1. <u>Direct Claims under Pennsylvania Law – No Private Right of Action</u>

Defendants first argue that the Pennsylvania ticket statute does not provide for a private right of action. Indeed, the statute provides only for criminal penalties and revocation of licenses by the licensor. *See* 4 P.S. § 213(a)-(c). Plaintiff appears to concede as much, as he does not respond to this argument in his opposition and his PSAC removes the direct cause of action under Pennsylvania state law. Accordingly, the FAC's direct cause of action under the Pennsylvania ticket statute is **DISMISSED** with prejudice.

However, because Plaintiff also asserts a derivative UCL claim based on the statute,[3] the Court will continue to analyze his claims – and Defendants' arguments against them – below.

    2. <u>Statutory Exemption for Internet Resale Transactions</u>

Defendants next argue that the Pennsylvania ticket statute does not apply to internet resale transactions such as those that take place on Stubhub. They point to § 202(c) of the statute, which provides that "[t]he provisions of this act *shall neither restrict nor otherwise apply to*, nor make illegal, the resale, offering at resale or purchase of a ticket to any amusement or place of amusement through an Internet website nor serve as the means through which resales and purchases can be made." 4 P.S. § 202(c) (emphasis added). By its plain language, the statute thus exempts from the act (which includes 4 P.S. §§ 211, 202(a), and 210(c)), ticket resales through websites such as Stubhub from its requirements. Only internet resales are at issue in this case, as Plaintiff's FAC alleges that the Phillies complied with § 211 in the primary ticket sale market (*i.e.*, the ticket issue by the Phillies contain the required pricing information). *See* FAC ¶ 13.

---

[3] Derivative UCL claims are typically allowed even when the underlying law does not provide for a private right of action, so long as that law does not bar it by, *e.g.*, "indicat[ing] that exclusive enforcement authority shall lie with the government and explicitly preclud[ing] private enforcement, or [by] expressly provid[ing] immunity for the conduct alleged." *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169, at *14 (N.D. Cal. Oct. 05, 2010).

a.  Section 211

The exemption of § 202(c) does contain one caveat, but it does not help Plaintiff.  Section 202(c) provides that a reseller who uses a website to sell his or her tickets need not be licensed as a reseller so long as the website operator meets certain enumerated requirements, such as a physical presence in the state or certificate of authority from the state, and a refund guarantee for consumers.[4]  Before examining this licensing requirement, the Court notes that § 202(c) imposes no other limitations on its exemption for internet resale activity.  Under the interpretive canon *expressio unius est exclusio alterius*, the fact that the Pennsylvania legislature saw fit to include only one specific caveat regarding licensing to its exemption of internet resale activity indicates that there is

---

[4] The full section provides:

> The provisions of this act shall neither restrict nor otherwise apply to, nor make illegal, the resale, offering at resale or purchase of a ticket to any amusement or place of amusement through an Internet website nor serve as the means through which resales and purchases can be made. A reseller that uses the Internet website shall not be required to obtain a license to resell through the Internet website if the operator of the Internet website:
>
> (1) Has a business presence and physical street address in this Commonwealth and clearly and conspicuously posts that address on the Internet website, or has a business presence in this Commonwealth and one of the following: a registered agent, a foreign business license or a certificate of authority issued by the Department of State.
>
> (2) Guarantees to all purchasers that it will provide, and in fact provides, a full refund of the amount paid by the purchaser, including all fees, regardless of how characterized, if any of the following occur:
>
> (i) The amusement is canceled. If the amusement is canceled, reasonable handling and delivery fees need not be refunded as long as the previously disclosed guarantee specifies that the fees will not be refunded.
>
> (ii) The ticket received by the purchaser does not allow the purchaser to enter the amusement, for reasons including the fact that the ticket is counterfeit or has been canceled by the issuer due to nonpayment, unless the ticket is canceled due to an act or omission by the purchaser.
>
> (iii) The ticket fails to conform to its description on the Internet website.

§ 202(c).

no other exception to the exemption for internet sales. *See generally Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) ("[T]he Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under § 1983. *Expressio unius est exclusio alterius*.") (emphasis in original). Thus, § 211's requirement that owners include the established price and maximum premium on tickets they print falls within the exemption. Section 211 does not apply to internet sales.

Furthermore, whether or not the licensing exception to the § 202(c) exemption applies to either Defendants is irrelevant to § 211's pricing requirements; § 211 does not depend on licensing status.[5] Accordingly, the statute exempts Defendants from any requirement to print pricing information on re-sold tickets so long as those tickets are sold online. Plaintiff cannot state a UCL "unlawful" claim based on alleged violations of § 211.

### b. Sections 202(a) and 210(c)

Plaintiff's FAC also alleges that Stubhub violates §§ 202(a)[6] and 210(c)[7] by failing to obtain a reseller's license, by failing to conspicuously display a price list with the established price and the actual charged price for each ticket (which is required of licensees), and by assisting unlicensed resellers in selling tickets via its website. *See* FAC ¶ 59(e)-(g). Stubhub contends that (1) these

---

[5] Section 202(c) applies to "owners," not licensees. In that regard, Defendants also argue that (1) Stubhub cannot be held liable under § 211 because it is not an "owner" under the statute, and (2) the Phillies cannot be held liable for Stubhub's conduct in the secondary market because § 211 only requires the Phillies to print pricing information on tickets they issue for the primary market. Plaintiff argues in response that the Phillies have a continuing obligation to ensure that all tickets used for admission to CBP include the information required by § 211, and that Stubhub can be held liable for aiding and abetting the Phillies' violation of this requirement. Because, as discussed above, § 202(c) categorically exempts internet resale activity from the requirements of § 211, the Court need not address these arguments.

[6] "Subject to subsection (c), no person shall purchase with intent to resell, resell or engage in or continue in the business of reselling any tickets of admission, or any other evidence of the right of entry to any place of amusement, at a price higher than the marked ticket price fixed by the owners of such place of amusement, without having first obtained a license to so resell or engage in such business from the licensor of the county or city in which such person intends to conduct such business as hereinafter provided, and no person shall so resell or conduct such a business during any period of suspension or revocation of his license." 4 P.S. § 202(a).

[7] "Every licensee shall cause to be posted and at all times displayed in a conspicuous place in his place of business, a price list showing the established price and the price being charged by such licensee for every type of ticket which he is reselling." 4 P.S. § 210(c).

provisions do not apply to it because it is not a reseller; and (2) it satisfies the requirements for website operators under § 202(c), such that neither it nor resellers using its site are required to be licensees.

Plaintiffs' opposition does not address any of Stubhub's contentions regarding licensing, nor does he dispute Stubhub's evidence submitted to demonstrate its compliance with § 202(c)'s requirements for website operators – requirements which excuse it from licensing. *See* Hochstadt Decl., Docket No. 24 (submitting information from the Stubhub website at Exhibits E-G regarding its office in Pennsylvania, its FanProtect Guarantee policy which appears to conform to the requirements in § 202(c)(2), and its certificate of authority from the Pennsylvania Department of State). Indeed, Plaintiff's PSAC drops all reference to these sections of the statute and omits any claim based on Stubhub's or third-party resellers' lack of a license. Plaintiff therefore appears to concede that he has failed to state a claim under these sections.

   c. <u>Other Claims</u>

Finally, Plaintiff's FAC had included allegations that StubHub acted unlawfully by failing to disclose the identities of third-party sellers who sell tickets through its site. FAC ¶ 72. However, Plaintiff's proposed SAC drops this claim and as Defendants point out, the statute contains no requirement for such disclosure.

Because Plaintiff has alleged no violation of the Pennsylvania ticket statute, his claim under the UCL's unlawful prong necessarily fails. "Where a plaintiff cannot state a claim under the "borrowed" law, []he cannot state a UCL claim either." *Dorado v. Shea Homes Ltd. Partnership*, No. 1:11–cv–01027 OWW SKO, 2011 WL 3875626, at *19 (E.D. Cal. Aug. 31, 2011) (quoting *Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001)). Accordingly, the Court **DISMISSES** the UCL claim with prejudice insofar as it relies on the unlawful prong.

  3. <u>UCL Fraudulent Prong</u>

In addition to his claim under the unlawful prong of the UCL, Plaintiff's FAC raises a "fraudulent" UCL claim. *See* FAC ¶ 80 ("The Defendants' acts and practices described above are likely to mislead a reasonable consumer acting reasonably under the circumstances."). "In order to state a cause of action under the fraud prong of the UCL a plaintiff need not show that he or others

8

were actually deceived or confused by the conduct or business practice in question. Instead, it is only necessary to show that members of the public are likely to be deceived." *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000) (internal citations and quotation marks omitted); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (stating same). "[T]his prong of the UCL is governed by the reasonable consumer test: a plaintiff may demonstrate a violation by show[ing] that [reasonable] members of the public are likely to be deceived." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010).

Defendants argue that Plaintiff has failed to state a claim under the fraudulent prong for the following reasons: (1) Defendants were under no duty to disclose the ticket pricing information Plaintiff alleges they omitted from tickets sold through Stubhub; (2) Even assuming a duty to disclose, Stubhub's numerous disclosures on its website adequately provide consumers with the information Plaintiff alleges was concealed; and (3) Plaintiff's claims of deception are not plausible.

Plaintiff's opposition and PSAC appears to concede that he states no claim under the fraudulent prong. He does not address Defendants' arguments in his opposition; rather, he argues only that he has stated a claim under the unlawful and unfair prongs. In addition, his PSAC omits any reference to the fraudulent prong and no longer describes Defendants' conduct in terms of the likelihood of deceiving consumers. Rather, the PSAC asserts only unlawful and unfair claims. PSAC ¶¶ 52-67. Accordingly, Plaintiff appears to have waived such a claim.

Moreover, even if not waived, Plaintiff's UCL fraud claim lacks merit. First, as discussed above, the Pennsylvania statute upon which Plaintiff's allegations are based expressly exempts Defendants from the disclosure requirements Plaintiff alleges they violated. *See* 4 P.S. § 202(c). "[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *Berryman v. Merit Property Management, Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) (internal citations and quotation marks omitted); *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987 (2008) (same); *see also Weinstein v. eBay, Inc.*, No. 10 Civ. 8310(JFK), --- F. Supp. 2d ----, 2011 WL 2555861, at *6 (S.D.N.Y. June 27, 2011) (dismissing deceptive practices claim under New York law based on identical fact pattern because Defendants had no duty to disclose the omitted ticket pricing information). Beyond the disclosure duty alleged under

Pennsylvania law, Plaintiff has alleged no other basis for a duty to disclose ticket pricing information. Thus, Plaintiff has failed to state a claim under the fraudulent prong of the UCL.

Second, even assuming a duty to disclose, Stubhub has submitted numerous screenshots of its website demonstrating that it effectively discloses the information Plaintiff alleges it conceals. For example, at the bottom of each page, it discloses that "[t]icket prices are set by sellers and may differ from face value." *See, e.g.*, Hochstadt Decl., Ex. H.1. Stubhub also requires buyers to acknowledge that they "may be ordering tickets above face value" before they place their order. *Id*. Ex. I.1; *see also id.* Ex. J (Buyer Q&A disclosing that tickets sold on Stubhub are "most likely" above face value, and informing consumers that they should check "an event's ticket prices with the venue before placing an order" if they are concerned about the price they will pay for tickets). The Phillies disclosed the relevant price information for Plaintiff's exact tickets, informing customers that such tickets are available only on a season ticket basis for $4,930 per seat. *Id*. Ex. C. Given these and other disclosures on Defendants' websites, Plaintiff's claim that reasonable consumers would be deceived and forced into paying higher prices than they otherwise would is not plausible. A reasonable consumer would understand, given the information plainly disclosed on Stubhub's website, that he was buying tickets from a third-party reseller and that, due to supply and demand, he may pay a higher price for his tickets than the seller paid to acquire them. As the court in *Weinstein*, 2011 WL 2555861 at *7 observed, "In order for StubHub's failure to print the face value on a reissued ticket to be deceptive, a buyer would have to believe that a reseller in possession of a limited resource (which is likely not available directly from the vendor) does not charge a premium for her goods. This line of reasoning attributes to consumers a level of stupidity that the Court cannot countenance and that is not actionable under [New York's consumer protection law]." (Internal citations and quotation marks omitted.) *See also McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382, 1395 (2005) ("Defendants are engaged in business for a profit. Their failure to disclose their own costs or profit margins is not, on its face, unfair."). That someone would attempt to make a profit on selling their tickets is not deceptive; it is standard business practice. Moreover, Plaintiff agreed to pay the purchase price he actually paid, so there was no deception in the price he was required to pay.

Accordingly, the Court **DISMISSES** Plaintiff's UCL fraud claim with prejudice.

4.      UCL Unfair Prong

Although Plaintiff's FAC did not raise a claim under the unfair prong of the UCL, his PSAC does raise such a claim. PSAC ¶¶ 61-67. For conduct to be unfair under the UCL, "(1) [t]he consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Kilgore v. KeyBank*, 712 F. Supp. 2d 939, 951 (N.D. Cal. 2010) (citing *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006)).

Plaintiff alleges that Defendants' business practices are unfair under the UCL because their failure to disclose the established price and maximum premium on tickets reissued by Stubhub creates "artificial demand" for re-sold tickets and "force[s] [consumers] to pay higher ticket prices to Phillies' games." PSAC ¶¶ 64-65. Defendants argue that Plaintiff has failed to state a claim under the unfair prong because: (1) Plaintiff fails to allege an injury; and (2) even assuming injury, it could have been reasonably avoided.

As for the first argument, Plaintiff fails to explain how the lack of disclosure of the original established price "forced" him to pay a higher price for his tickets upon resale. Since third-party sellers were free to charge more than face value for the tickets, disclosure of their profit margin does not appear to affect anyone's conduct. Although Plaintiff argues that Defendants' conduct creates "false demand" for the tickets, Opp. at 8, it is not clear how the demand for tickets is false merely because the requested price is higher than the face value and the seller does not disclose her profit. That a seller of goods may make a certain profit margin does not, on its own, indicate any false demand for the goods at that sale price. *See Weinstein*, 2011 WL 2555861 at *8 ("If sellers using StubHub's website successfully charge prices above face value, they can do so because of the law of supply and demand, not because StubHub allegedly withholds price information from consumers."). So long as purchasers of tickets are getting exactly what they paid for – genuine tickets – at a price they are willing to pay, it is hard to understand how such a transaction could be deemed unfair.

Moreover, as Defendants point out, the allegedly unfair conduct was Stubhub's failure to print pricing information on its reissued tickets; yet Plaintiff did not receive such reissued tickets

until *after* he had agreed to and paid the purchase price. Reply at 8. Thus, it is difficult to see how omitting information from tickets could have caused the harm Plaintiff alleges. *See In re Firearm Cases*, 126 Cal. App. 4th 959, 981 (2005) ("[A] UCL violation may [not] be established without a link between a defendant's business practice and the alleged harm."). Plaintiff bought the tickets before seeing them. Whether they contained the established price did not matter as Plaintiff had already made the purchase.

Furthermore, Stubhub's repeated disclosures informing consumers that they may be paying more than face value for their tickets further undermine Plaintiff's theory of harm. Defendants also point out that Plaintiff's actual purchase price did not exceed the maximum premium of his tickets on a per-ticket basis.[8] *See* Mot. at 18 n.14 (explaining that the maximum price on Plaintiff's tickets would have been $75 pre-tax, which is what Plaintiff paid).

Therefore, it is difficult to see how disclosure of the established and maximum price would have had any effect on Plaintiff's conduct. Accordingly, Plaintiff has probably failed to plausibly allege injury as a result of Defendant's allegedly unfair conduct.

As to the second argument, Plaintiff fails to explain how the alleged harm could not have been reasonably avoided. Indeed, because of Stubhub's disclosures that consumers may pay above face value for tickets purchased through its site, any consumer who wanted to avoid paying more than face value could simply have looked at the established prices on the venue's website, as Stubhub recommends they do. *See Harmon v. Hilton Group*, No. C-11-03677 JCS, 2011 WL 5914004, at *10 (N.D. Cal. Nov. 28, 2011) ("[A]ny supposed 'harm' could easily have been avoided by a reasonable consumer in light of the disclosures discussed above alerting hotel guests of the opportunity to receive a discount if the newspaper were declined.").

Accordingly, the Court **DISMISSES** Plaintiff's claim under the UCL's unfair prong with prejudice.

---

[8] As noted above, the tickets Plaintiff ordered were originally part of a season-ticket-only package, and were not available on the primary market on a per-ticket basis. *See* Mot. at 4 n.3 (citing Hochstadt Decl. Ex. B) (screenshot of Phillies website describing tickets in the Hall of Fame Club).

#### 5. UCL's Application to the Phillies

Finally, the Phillies argue that even assuming Plaintiff has stated a claim under some prong of the UCL, the UCL does not extend to the Phillies because it does not protect out-of-state plaintiffs from acts by out-of-state defendants. *See* Mot. at 19-20; Reply at 6-7. *Cf. Sullivan v. Oracle Corp.*, 51 Cal.4th 1191 (2011) (finding that UCL did not apply where the decision to misclassify workers under the Fair Labor Standards Act took place in California, but the policy was implemented out-of-state and the employees were non-residents). In the instant case, Plaintiff does not dispute that both he and the Phillies are out-of-state parties, that the ticket sale at issue took place out of state, and that the third-party reseller was located out of state. Instead, he argues that the UCL applies to the Phillies because they entered into a contract with Stubhub and "agreed to allow Stubhub to reissue tickets to Phillies games without the established price or maximum premium from Stubhub's principal place of business located in California." Opp. at 11.

Plaintiff's invocation of the UCL against the Phillies appears tenuous in light of *Sullivan*. However, because Plaintiff has failed to state a claim under the UCL as against either Defendant, the Court need not resolve this question. Even assuming *arguendo* that the UCL applies to the Phillies, Plaintiff has failed to state a claim.

### C. Motion for Leave to Amend

Plaintiff requests leave to file an SAC, explaining that he used his amendment as of right to file the FAC and correct a misspelling of his name, but did not make any substantive changes to his claims between the original complaint and the FAC. However, as discussed above, Plaintiff's proposed changes in his PSAC also fail to state a claim against Defendants. Accordingly, the Court **DENIES** leave to amend on futility grounds. *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) ("A proposed amended complaint is futile if it would be immediately 'subject to dismissal.'") (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal.") (internal citations omitted).

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's FAC with prejudice and **DENIES** Plaintiff's motion for leave to amend. The Clerk shall enter judgment and close the file.

This Order disposes of Docket Nos. 23 and 32.

IT IS SO ORDERED.

Dated: February 15, 2012

_____
EDWARD M. CHEN
United States District Judge